1  WO

2

3

4

5

6                  IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9   Thomas Guerrera,                        No. CV-13-01354-TUC-BPV

10                          Plaintiff,       **ORDER**

11          v.

12  Carolyn W. Colvin, Acting Commissioner
    of Social Security,

13                          Defendant.

14

15          Plaintiff, Thomas Guerrera, filed this action for review of the final decision of the

16  Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Plaintiff presents four

17  issues on appeal: whether the Administrative Law Judge's (ALJ's) erred in evaluating

18  Plaintiff's drug and alcohol use, the opinion of treating psychiatrist Yong Lee, M.D.,

19  plaintiff's credibility and the vocational expert's testimony. (Doc. 26.) Before the court is

20  an opening brief filed by Plaintiff (Doc. 26) and the Commissioner's opposition (Doc.

21  31). Plaintiff has not filed a reply brief.

22          The United States Magistrate Judge presides over this case pursuant to 28 U.S.C. §

23  636 (c) and Fed.R.Civ.P. 73, having received the written consent of both parties. (Doc.

24  12.)

25          The Defendant's decision denying benefits is reversed and remanded for further

26  proceedings consistent with this order.

27

28

## I.   Background

Plaintiff filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in October 2010, alleging an onset of disability beginning June 30, 2008, due to depression, bipolar disorder, severe mental illness, rheumatoid arthritis of the hips, severe pancreatitis, liver problems, and shoulder displacement. Transcript/Administrative Record (Tr.) 174-88, 204. The applications were denied initially and on reconsideration. Tr. 91-94, 99-102, 106-13, 111-17. In April 2012, Plaintiff appeared with counsel and testified before an ALJ at an administrative hearing. Tr. 31-90. On July 13, 2012 the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 17-25. This decision became the Commissioner's final decision when the Appeals Council denied review. Tr. 1-3. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1)

## II.   The Record on Appeal

### a.   Plaintiff's Background and Statements in the Record

Plaintiff was 22 years of age on the June 30, 2008 alleged disability onset date. Tr. 201. Plaintiff completed two years of college with specialized training in firefighting. Tr. 205. Plaintiff worked in the recent past as a firefighter and as a clerk in an electronics store. Tr. 205.

Plaintiff testified at a hearing before the ALJ on April 30, 2012 that he was a firefighter EMT from 2005 to 2008, but lost the job after getting a DUI. Tr. 54. After losing that job he tried working at a hospital as a medical technician, but "had a psychotic break or something" and was only able to work for about a week.  Tr. 56-57. Plaintiff testified he first started experiencing mental illness, basic depression, when he was 15 or 16 years old. Tr. 57-58. Plaintiff agreed that he had been admitted to Sonora Hospital six times and Palo Verde Hospital two to three times, and testified that he is usually admitted as a result of getting paranoid and angry. Tr. 59-60. Plaintiff testified he has racing thoughts that happen when they take him off of, or don't give him, his medications. Tr. 63. Plaintiff experiences visual and auditory hallucinations. Tr. 64.

1

Plaintiff testified that he had a history of using marijuana, cocaine, alcohol, and pain medications. Plaintiff testified that it had been less than a year, but more than six months from the time of the hearing that he had used marijuana. Tr. 38-39. Plaintiff stated that he had only used cocaine twice, and that the last time he used cocaine was between two and three years before the hearing. Tr. 40.

Plaintiff testified that he had an alcoholic drink with dinner about three weeks prior to the hearing, but had only had a drink twice in the past two or three years. Tr. 41-42. Plaintiff testified that prior to the drink he had with dinner that same month, the last time he had a drink was in October 2010. Tr. 49-52. Plaintiff explained that he drank because he started hearing voices, and felt like people were talking about him, and when he drinks it would go away. Tr. 53.

Plaintiff also testified that he had abused pain medications, most recently between one and two years prior to the hearing. Tr. 43. Plaintiff testified that he was initially treated for a work injury by a pain doctor who prescribed pain medications, but discharged him abruptly when he took a pain medication that he had obtained from the emergency room. Tr. 43-44. Since that time he kept returning to the emergency room for treatment of pain in his legs, and for more pain medication in order to not get sick. Tr. 44.

In January 2011, Plaintiff attempted detoxification but discharged himself after a day-and-a-half because it wasn't working and because they did not have his psychiatric medications and he started "freaking out." Tr. 45-47. He testified that he sought treatment through a methadone clinic, and had been clean for a year and was currently only taking "psych meds" and methadone. Tr. 44-45, 48.

Plaintiff lives at home with his parents, and testified that on a daily basis he sleeps and spends twenty-three hours a day in his room, only going out to get food. Tr. 65-68. Plaintiff's mother does all of his shopping and cooking, and washes his clothes. Tr. 68-69. Plaintiff testified that he hasn't taken a shower in three or four months. Tr. 69. Plaintiff's ability to concentrate on something is "horrible"; he is only able to concentrate

for a couple of minutes. Tr. 65. Plaintiff takes many medications but they do not control his symptoms completely, and experiences side effects from the medications including not being able to remember anything. Tr. 66-67.

A vocational expert (VE) testified that, consistent with the Dictionary of Occupational Titles, a hypothetical individual would be able to perform work in the national or regional economies as a retail marker or laundry worker, when the ALJ posed the following hypothetical limitations: No exertional limitations. Could not use ropes ladders or scaffolds, can be around others during the work day but is limited to only occasional interaction with his supervisors and coworkers, and limited to only incidental public contact. Limited to simple, routine tasks that are not performed in a fast-paced production environment. Can attend and concentrate for two hours, then needs to take a ten to fifteen-minute break, can then attend and concentrate for two more hours, then needs to take a half hour or hour lunch break, then can attend for two more hours, then another fifteen minute break, then can attend for two more hours until the individual completes an eight-hour day. Needs to use public transportation to commute to and from the work site. Tr. 74-75.

The VE explained that if any individual cannot attend for up to two hours at a time, it would preclude all employment. Tr. 77-78.

### b.  The ALJ's Findings

The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2008, the alleged onset date, and met the insured status requirements of the Social Security Act through September 30, 2013. Tr. 19, ¶¶ 1-2. The ALJ found that Plaintiff has the severe impairments of bipolar disorder; polysubstance abuse; arthritis of the hips; and pancreatitis. Tr. 20, ¶ 3. The ALJ found that Plaintiff's mental impairments, including the substance use disorder, met sections 12.04 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). Tr. 20, ¶ 4. The ALJ further found that if Plaintiff stopped the substance use, the remaining limitations would have more than a minimal impact on Plaintiff's ability to perform basic work activities, and thus Plaintiff would

continue to have a severe impairment; Plaintiff, however, would not have an impairment that meets or medically equals any of the impairments in the Listings. Tr. 20, ¶¶ 5-6. The ALJ further found that, if Plaintiff stopped the substance use, he "would have the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels, with customary breaks, but he cannot climb ladders/ropes/scaffolds. Tr. 21. Additionally, Plaintiff has the following nonexertional limitations: "he is limited to simple routine tasks that are not performed in a fast-paced production environment. He is further limited to only occasional interaction with his supervisors and co-workers, and limited to only incidental public contact, defined as brief, intermittent and superficial. Finally, he is limited to occupations that allow him to use public transportation to and from the work site." Tr. 21. The ALJ found that if Plaintiff stopped the substance abuse, he would continue to be unable to perform any past relevant work. Tr. 23, ¶ 8. The ALJ further found that Plaintiff's substance use disorder is a contributing factor material to the determination of his disability, and that if the Plaintiff stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and concluded that Plaintiff was not under a disability from June 30, 2008 through the date of the ALJ's decision. Tr. 23-24, ¶¶ 12-13.

### III. Discussion

#### a. Standard of Review

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence*." Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). " 'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035

(9th Cir. 2007) (citing *Robbins v. Commissioner, Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.' " *Id.* (quoting *Robbins,* 466 F.3d at 882).

The Court considers only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. *Garrison v. Colvin*, 795 F.3d 995, 1010 (9th Cir. 2014) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) he has not worked since the alleged disability onset date, (2) he has a severe impairment, and (3) his impairment meets or equals a listed impairment or (4) his residual functional capacity (RFC) precludes him from performing his past work. At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. §§ 404.1520(a); 416.920(a).

b. Analysis

Plaintiff argues the ALJ erred: 1) in his consideration of the impact of Plaintiff's drug and alcohol use on his allegations of disability; 2) in erroneously evaluating the opinions of the treating psychiatrist, Dr. Lee; 3) in erroneously evaluating Plaintiff's credibility; and 4) in relying in error on the VE's testimony. (Doc. 26.) Defendant disputes Plaintiff's arguments and contends the administrative decision is supported by substantial evidence and free of harmful legal error. (Doc. 31.) The Court has reviewed the record and finds that the ALJ erred by relying on the VE's testimony without addressing apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles.

*i.  Substance Abuse and Alcoholism*

A person is not considered disabled "if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is

disabled." 42 U.S.C. § 423(d) (2)(C). In determining whether a claimant's alcoholism or drug addiction is material under 42 U.S.C. § 423(d)(2)(C), the test is whether an individual would still be found disabled if he or she stopped using alcohol or drugs. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

If the ALJ finds a claimant disabled after applying the familiar five-step sequential evaluation process, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), and there is medical evidence of drug addiction or alcoholism ("DAA"), the ALJ must determine if the DAA is a contributing factor material to the determination of disability. *See* Social Security Ruling (SSR) 13-2p, 2013 WL 621536, at *2. In order to determine if the DAA is a contributing factor material to the determination of disability, the ALJ determines if the claimant's other impairments would improve to the point of nondisability in the absence of the DAA. *Id.* at *7. If the remaining limitations would not be disabling, the DAA is a contributing factor material to the determination of disability and the claim is denied. 20 C.F.R. §§ 404.1535, 416.935; SSR 13-2p at *4. The ALJ should make this determination based on the record as a whole. *Id.* Plaintiff continues to have the burden of proving disability throughout the DAA analysis. *Id.* at *4.

Plaintiff argues that the ALJ's determinations regarding substance use were not based on substantial evidence. (Doc. 26 at 19.) "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Similarly, "[i]f the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary." *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998). The ALJ here cited substantial evidence from the record to support his finding that Plaintiff would not be disabled in the absence of the DAA. (Tr. 22-23). The ALJ explained, citing portions of the record, that "the pertinent psychological evidence of record details an extensive [] history of mental symptoms, although invariably intertwined with extensive

polysubstance abuse, including opiates, cocaine, marijuana and alcohol." Tr. 22. The ALJ noted that in April 2011, Plaintiff was admitted to a behavioral health hospital for depression, with an admission global assessment of functioning ("GAF")[1] score of 30, and, after one week of treatment, Plaintiff was discharged with a GAF score of 58. Tr. 23. Other evidence in the record supports the ALJ's finding that the record suggests that when Plaintiff is "clean and sober" his mental limitations would not preclude him from performing consistent and reliable work activity. In July 2008, Plaintiff was admitted to a behavioral health hospital several weeks following the DUI that caused the loss of his job as a firefighter. On admission, Plaintiff was diagnosed with major depression, recurrent, severe, and alcohol dependence, severe, and assessed with a GAF score of 40 to 45 on admission, but a GAF of 80 to 85 on discharge. Tr. 896-899. Plaintiff's treating physician noted that 36 hours of treatment with increased medications "pulled him out of the majority of his depressive signs and symptoms" and further treatment addressed his

---

[1] GAF Scores range from 1-100. DSM-IV at 32. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F .3d 1161, 1164 n. 2 (9th Cir. 1998). In arriving at a GAF Score, the clinician considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. DSM-IV-TR, at 34.

A GAF score of 41-50 indicates:

 Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

*Id*.

A GAF score of 71-80 indicates:

If symptoms are present, they are transient and expectable reactions to psychosocial stressors (*e.g.*, difficulty concentrating after family argument); no more than slight impairment in social, occupational or school functioning (e.g., temporarily failing behind in schoolwork).

"[C]ourts have specifically held that a GAF score does not directly correlate to disability." *Vose v. Astrue,* 2007 WL 4468720, *17  (D.Ariz. Dec.17, 2007) (citations omitted)).

anxiety with no side effects whatsoever. Tr. 897-98; *see also* Tr. 925-934 (October 2010 hospital admission for suicidal ideation, paranoia, symptoms of mania, illusions. GAF on admission: 25; GAF on discharge: 60. Plaintiff "strongly discouraged to stop hospital jumping and/or doctor shopping if in fact his motivation is purely recreational opiate abuse.").  Contrary to Plaintiff's assertion that the ALJ improperly required "complete sobriety as a precondition for being found disabled", the ALJ properly considered evidence in the record of Plaintiff's significantly improved mental function when "clean and sober" as an indication that Plaintiff's mental limitations alone would not preclude him from performing consistent and reliable work activity. The Court finds no error in the ALJ's materiality determination.

The Court also finds unpersuasive Plaintiff's argument that the ALJ "cherry-picked the record for alleged inconsistencies" and that there was not a record of "active consistent substance use during the relevant period" or "intentional noncompliance with psychiatric treatment." (Doc. 26 at 20.) As summarized in Defendant's responsive brief, the record establishes that, during the relevant period, Plaintiff sought opiates from the emergency rooms at eight different hospitals. *See, generally*, Tr. 366-2007; *see, e.g.*, Tr. 442-55, 750-55, 866-82, 956-68, 984, 991-95, 1001-02, 1026-27, 1084, 1104-08, 1117-18, 1125-88, 1211-62, 1227, 1235-36, 1265-68, 1273, 1288, 1290-95, 1358-93, 1398-1403, 1414-24, 1499-1691, 1705-08, 1726-28. Several physicians commented on Plaintiff's drug-seeking behavior. Tr. 665-67, 722, 868, 1026-27, 1065, 1207-08. One physician noted that Plaintiff had sought treatment at Northwest Medical Center's emergency department 28 times in one year, always complaining of pain and seeking pain medication. Tr. 1205. Plaintiff often denied drug or alcohol use at hospital intake, but frequently tested positive for alcohol, opioids, Tylenol, cocaine, marijuana and benzodiazepines. *See, e.g.*, Tr. 889, 971, 1011, 1032, 1040, 1065, 1067, 1207-08, 1500, 1779. By his own admission, Plaintiff acknowledged that he had used opiates and snorted heroin daily, that he had been opiate dependent for over eight years, and that he hospital-hopped to obtain drugs. Tr. 932, 936, 1065, 1067, 1779, 1845. The record also supports

that he did not take his psychiatric medications at times, that he readjusted the doses without medical approval, that he abused the benzodiazepines prescribed to him for anxiety, and that he checked out of hospitals against medical advice. Tr. 442-55, 556-67, 572-77, 585, 593-95, 865-83, 1032-33.

The Court finds that the ALJ's interpretation of the evidence is well-supported by the medical evidence in the record. Even if the Court found another interpretation more plausible, it may not substitute its judgment for the ALJ's. The Court, therefore, rejects Plaintiff's argument that the ALJ erroneously evaluated substance use.

### ii. Residual Functional Capacity

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC by rejecting the opinion of Plaintiff's treating psychiatrist, Dr. Lee and in his assessment of Plaintiff's credibility. (Doc. 26, at 12, 29.) The Commissioner responds that the ALJ reasonably weighed Dr. Lee's opinion and took into account the limitations he opined in assessing Plaintiff's RFC and his credibility determination was supported by substantial evidence. (Doc. 31 at 17, 21.) The Court finds no error in the ALJ's and consideration of Dr. Lee's opinion and Plaintiff's credibility and in the ALJ's RFC assessment.

In May 2011, Plaintiff sought methadone treatment from his care providers at La Frontera Center, stating that he was using illicit opiate drugs daily, and reported being opiate dependent for over 8 years. Tr. 1845. Within 10 days of treatment, he reported feeling less depressed. Tr. 1851. While Plaintiff reported feeling anxious, care providers observed that he was coherent and remained sober. Tr. 1865. In August 2011, Plaintiff saw his psychiatrist, Dr. Lee, who observed that he was alert and cooperative, with no thought disorder or depression. His insight and judgment were improving though he was anxious as he had missed his anti-anxiety medication that morning. Tr. 1881. A therapist also noted in August that Plaintiff was alert, oriented with normal mood, affect, thought content, speech, insight, and judgment, with no evidence of drug or alcohol use. Tr. 1883.

In September 2011, Plaintiff reported some family issues to Dr. Lee, but otherwise reported continued compliance with the methadone program, and Dr. Lee observed that

Plaintiff was alert and cooperative, with a stable mood, adequate motivation, and unimpaired judgment and insight. Tr. 1879.

In October 2011, Dr. Lee observed that Plaintiff was cooperative and rational, with an appropriate affect, stable mood, and good judgment and insight. He did appear anxious and had intense emotions. Dr. Lee noted that Plaintiff's condition remained stable. Tr. 1877.

In November 2011, Plaintiff reported seven months sobriety with the use of methadone, but also a recent increase in depression. Tr. 1976. He was somewhat withdrawn, but Dr. Lee observed that he had no thought disorder and had fair judgment and insight. Tr. 1976.

In December 2011, Plaintiff reported to his treating psychiatrist, Nazila Adib, M.D., being sober for eight months. Tr. 1973. He reported no audio-visual hallucinations (AVH), but stated that once in a while he hears a radio that's on and feels the TV communicated with him. Tr. 1973. Dr. Adib described these incidents as "IOR" or ideas of reference[2], not hallucinations. Tr. 1973. He was calm and cooperative, with good eye contact, normal speech, a good congruent mood, coherent and linear thought process, and adequate insight and judgment. Tr. 1973. Dr. Adib determined that Plaintiff had been sober for 8 months, and that his alcohol dependence, cocaine abuse, and opiate dependence were in early remission on methadone maintenance. Tr. 1973.

After nearly a year of methadone treatment, in April 2012, it was determined that Plaintiff's alcohol abuse, cocaine dependence, and opioid dependence were in remission. Tr. 1970. While Plaintiff reported feeling "down," he was also calm and cooperative, with had good eye contact, normal speech, coherent thought process and content, and

---

[2] "Ideas of reference" are described by one online medical reference as "feeling strangers are noticing or somehow communicating with oneself." Schizotypal Personality Disorder, MedicineNet.com, http://www.medicinenet.com/schizotypal_personality_disorder/page3.htm (last visited February 18, 2015). Earlier, in August 2010, an attending physician also noted that what Plaintiff was describing was neither a visual nor an auditory hallucination. Tr. 1064.

adequate insight and judgment, no auditory or visual hallucinations, but continuing ideas of reference. Tr. 1971.

In April 2012, Dr. Lee completed a Mental Impairment Questionnaire, providing an opinion of Plaintiff's functioning. Tr. 2008-14. He reported that Plaintiff had a good response to treatment and had not been hospitalized since October 2010, but that his prognosis was guarded to fair. Tr. 2008. He opined that Plaintiff had mild or no restrictions in activities of daily living, but moderate restrictions in social functioning and maintaining concentration, persistence, and pace. Tr. 2012. He opined that Plaintiff had some serious limitations in functioning, but that they were not so severe as to prohibit him from meeting competitive standards. Tr. 2008-17. Dr. Lee responded "no" to the question "[i]f your patient's impairments include alcohol or substance abuse, do alcohol or substance abuse contribute to any of your patient's limitations set forth above?". Tr. 2013.

There are three types of medical opinions (treating, examining, and nonexamining) and each type is accorded different weight. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). The ALJ acknowledged Dr. Lee as Plaintiff's treating physician. Tr. 23. Generally, more weight is given to the opinion of a treating source than the opinion of a doctor who did not treat the claimant. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). Medical opinions and conclusions of treating physicians are accorded special weight because these physicians are in a unique position to know claimants as individuals, and because the continuity of their dealings with claimants enhances their ability to assess the claimants' problems. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *Winans*, 853 F.2d at 647; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to 'substantial weight.'"). If a treating doctor's opinion is not contradicted by another doctor (*i.e.*, there are no other opinions from examining or nonexamining sources), it may be rejected only for "clear and convincing"

reasons supported by substantial evidence in the record. *See Ryan*, 528 F.3d at 1198; *Lester*, 81 F.3d at 830. If the ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record. *See Valentine,* 574 F.3d at 692; *Ryan*, 528 F.3d at 1198; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

Specific and legitimate reasons are also required to reject a treating doctor's ultimate conclusions. *Cf. Lester*, 81 F.3d at 830 (citing *Embrey,* 849 F.2d at 422, and *Murray,* 722 F.2d at 502); *see also Reddick*, 157 F.3d at 725 (stating that "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion"). " 'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.' " *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The Social Security Administration has explained that an ALJ's finding that a treating source medical opinion is not well-supported by medically acceptable evidence or is inconsistent with substantial evidence in the record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. *Orn*, 495 F.3d at 632 (citing SSR 96-2p at 4, available at 61 Fed.Reg. 34,490, 34,491; 20 C.F.R. §§ 404.1527, 416.927). Treating source medical opinions are still entitled to deference and, "[i]n many cases, . . . will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 632; *see also Murray*, 722 F.2d at 502 ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.").

The ALJ rejected Dr. Lee's opinion in part, noting that Dr. Lee "failed to address, much less explain, the effects of the claimant's extensive history of polysubstance abuse (and possible current use), and its effect on his mental functioning." Tr. 23. Additionally,

the ALJ note that Dr. Lee "appears to assume all of the claimant's statements to be true, accurate and correct" and "has not always been told the truth by claimant about his substance usage and other activities." Tr. 30.

"An ALJ may reject a treating physician's opinion if it is based to a *large extent* on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (internal quotations omitted)(emphasis added)(citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Sandgathe v. Chater*, 108 F.3d 978, 980 (1997) (affirming the ALJ's rejection of a treating physician's opinion when it was based upon the claimant's self-reports, which the ALJ properly found to be exaggerated and unreliable); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.1989) (same)).

The ALJ reasonably found that Plaintiff was not fully credible. The ALJ discussed Plaintiff's testimony and allegations of limitations (Tr. 22), but ultimately found Plaintiff not fully credible, noting a number of inconsistent statements in the record. Tr. 22-23. 20 C.F.R. § 404.1529(c)(4) (an ALJ must consider whether there are conflicts between a claimant's statements and the rest of the evidence); SSR 96-7p, 1996 WL 374186, at *5 (one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record); *Thomas*, 278 F.3d at 959 (upholding credibility determination based upon claimant's "conflicting information about her drug and alcohol usage'"). The ALJ may rely on conflicting statements by a claimant regarding a claimant's alcohol or substance abuse, to reject a claimant's testimony. *See Thomas*, 278 F.3d at 959 (ALJ's finding, based on substantial evidence in the record, that claimant was not a reliable historian regarding drug and alcohol usage supports negative credibility determination); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ properly discounts claimant's testimony when claimant's testimony or behavior, including, among other things, statements regarding drinking, are not consistent).

Substantial evidence in the record supports the ALJ's determination that Plaintiff's statements and testimony regarding his substance abuse and alcohol use have been

contradictory. The ALJ noted that while Plaintiff denied illegal drug use in April 2011 (Tr. 22, 1890), he testified to a history of substance use (including marijuana, cocaine, and alcohol) at the April 2012 administrative hearing (Tr. 22, 40-43). The record establishes that while Plaintiff denied ever using drugs in January 2010 (Tr. 516), October 2010 (Tr. 927, 930, 971), and April 2011 (Tr. 1889-90), Plaintiff had, in fact, used and/or abused alcohol, opioids, marijuana, benzodiazepines, cocaine, and/or heroin throughout February 2008 to April 2011 (*see, generally*, Tr. 366-2007). Plaintiff admitted that he had used opiates and snorted heroin daily and had been opiate dependent for over eight years. Tr. 932, 936, 1065, 1067, 1779, 1845. Additionally, while Plaintiff reported to his care providers sustaining sobriety while in the methadone maintenance program since May, 2011 (Tr. 1976), in April 2012, Plaintiff testified that he had used marijuana sometime between six months and a year prior to the hearing, a time period during the course of his methadone program. Tr. 39.

The ALJ also reasonably noted inconsistencies in Plaintiff's statements about his alcohol use. Tr. 22-23. The ALJ noted that in March 2011, Plaintiff claimed he did not drink alcohol (Tr. 23, 1706) and, in April 2011, Plaintiff stated he had been sober from alcohol for several years (Tr. 22, 1889). However, Plaintiff also reported in April 2011 that he drank occasionally. Tr. 1896. The ALJ noted that it was contradictory for Plaintiff to testify at the administrative hearing that he was clean and sober from alcohol use for the last two years, while the record established he used it, at least, occasionally, during that time. Tr. 22, n.2, 23. He further noted that Plaintiff's contentions to care providers that he never abused alcohol were contradictory with his admissions that he used to drink heavily and that he got a DUI in 2008. Tr. 22, 1726, 1890, 1955. Given the number of inconsistent statements Plaintiff made about his drug and alcohol use in the record, it was reasonable for the ALJ to not find him fully credible. 20 C.F.R. § 404.1529(c)(4); SSR 96-7p, 1996 WL 374186, at *5; *Thomas*, 278 F.3d at 959.

The ALJ reasonably weighed Dr. Lee's opinion and took into account the limitations he opined in assessing Plaintiff's residual functional capacity. In finding that

- 15 -

Plaintiff's impairments would not meet listing-level severity if he stopped using illicit substances, the ALJ determined that Plaintiff had mild limitations in activities of daily living, but moderate limitations in social functioning and concentration, persistence, and pace, in accordance with Dr. Lee's opinion. Tr. 20, 2012. Similarly, in the residual functional restrictions the ALJ assessed for Plaintiff, he limited Plaintiff to simple routine tasks not performed in a fast-paced production environment; only occasional interaction with supervisors and coworkers; only incidental contact with the public (defined as brief, intermittent, and superficial); and occupations that allowed him both customary breaks and the ability to use public transportation to and from the work site. Tr. 21. These restrictions addressed Dr. Lee's opinion that Plaintiff had serious limitations (but was still able to meet competitive standards) in maintaining attention for two-hour segments; maintaining regular attendance and being punctual; performing at a consistent pace without unreasonable numbers and length of rest periods; carrying out detailed instructions; dealing with stress of semiskilled or skilled work; and traveling to an unfamiliar place. Tr. 2008-17.

To the extent that Dr. Lee's opinion limited Plaintiff beyond the restrictions contained in the ALJ's residual functional capacity, the ALJ provided clear and convincing reasons for doing so. The ALJ noted that Dr. Lee failed to explain the effects of Plaintiff's history of polysubstance abuse on his mental functioning. Tr. 23. In particular, Dr. Lee checked a box that alcohol and substance abuse did not contribute to Plaintiff's limitations. Tr. 2013. Dr. Lee treated Plaintiff from January 2011 through November 2011, the last seven months during a period which another treating psychiatrist, Dr. Adib, describes as "early remission" from drug and alcohol dependency. Tr. 1973. One month prior to Plaintiff's last appointment with Dr. Lee, Dr. Lee noted that Plaintiff was "[r]ecovering from opiate dependence." It was not unreasonable for the ALJ to not adopt Dr. Lee's conclusory opinion in its entirety, without further explanation of the impact of Plaintiff's drug and alcohol abuse and how it may have impacted his current functioning, even in a sober state, when Dr. Lee treated Plaintiff during a time

period when Plaintiff was dependent on alcohol and drugs, "recovering" from dependency, or in "early remission," and not yet in full remission. Tr. 23; 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *Thomas*, 278 F.3d at 957. An ALJ may discredit treating physicians' opinions that are unsupported by rationale or treatment notes, and offer no objective medical findings to support the existence of a claimant's conditions. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ found this to be true for Dr. Lee's opinion. The Court finds that, because the ALJ's decision giving limited weight to Dr. Lee's opinion is supported by specific and legitimate reasons that are supported by substantial evidence in the record, the ALJ did not err in giving limited weight to Dr. Lee's opinion. *See id*; *Lester*, 81 F.3d at 830. Further, as explained above, the ALJ noted that Dr. Lee's opinion appeared to rely upon Plaintiff's own reports, which the ALJ had reasonably discounted for inconsistencies. *Tonapetyan*, 242 F.3d at 1149 (treating source opinion reasonably discounted when based on claimant's subjective complaints). Thus, the ALJ's consideration of Dr. Lee's opinion, and determination of Plaintiff's RFC, was reasonable.

### iii.    Step Five Determination

Plaintiff contends that the vocational expert ("VE") relied on a database called "Skilltram" for "DOT[3] information and job descriptions," and, because the source is not one of the Commissioner's reliable sources, her testimony was insufficient on which to base a step-five denial under Social Security Ruling 00-4p. (Doc. 26, at 31-32.) Plaintiff also argues that at Step Five, the ALJ failed to reconcile apparent conflicts between the vocational expert's testimony and the DOT.

At Step Five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Zavalin v. Colvin*, --- F.3d ---, 2015 WL 728036, *3 (9th Cir. Feb.

---

[3] Dictionary of Occupational Titles.

20, 2015)(quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995)). The ALJ first assesses a claimant's "residual functional capacity," defined as the most that a claimant can do despite "physical and mental limitations" caused by his impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ then considers potential occupations that the claimant may be able to perform. *See* 20 C.F.R. §§ 404.1566, 416.966.

Social Security Rulings provide that SSA adjudicators may not rely on evidence provided by a vocational expert if that evidence is based on underlying assumptions that are inconsistent with the agencies regulatory policies or definitions. SSR 00-4p, *available at* 2000 WL 1898704, * 3. "[Social Security Rulings] reflect the official interpretation of the [Social Security Administration] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) (quoting *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n. 2 (9th Cir. 2005)). Plaintiff's attorney asked the VE when was the last time the DOT reviewed the job description at issue, and the VE replied that the last time it was actually reviewed was May 2010, and that she looked at a database called "Skilltram" to make that determination. Tr. 85. The VE described the Skilltram database as one which is used by VEs which "collects all the DOT information and job descriptions." TR. 85. Plaintiff has failed to demonstrate that the Skilltram database is not "reliable job information." *See* SSR 00-4p (describing "reliable job information" as "available from various publications, including the DOT").

Plaintiff contends that the vocational expert gave the wrong Dictionary of Occupational Titles (DOT) job number for the retail marker position she testified that a person of Plaintiff's age, education, past worker experience, and residual functional capacity could perform. (Doc. 26, at 32; Tr. 169). Additionally, Plaintiff contends that the ALJ erred in relying on the vocational expert's testimony because, in discussing a laundry worker job, the VE described the job as being performed in a commercial establishment, and stated it was light work when the DOT describes the job number the

VE referenced (DOT # 302.685-010) as a domestic laundry worker position, and is in fact, medium work. (Doc. 26 at 32); Tr. 169; *see also* DOT 302.685-010, available at 1991 WL 672657. Prior to issuance of the ALJ's opinion, Plaintiff's counsel submitted a letter to the ALJ explaining these discrepancies and arguing that the incorrect DOT numbers provided by the VE for the jobs she identified calls into question her testimony regarding the characteristics of the jobs and the number of jobs available nationally and locally. Tr. 170. The ALJ did not address the discrepancies in job numbers and descriptions, and found that the VE's testimony was consistent with the information contained in the DOT, and that Plaintiff could perform the requirements of the jobs as described by the VE in her testimony. Tr. 24.

"The Social Security Administration has taken administrative notice of the Dictionary of Occupational Titles, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."[4] *Massachi v. Astrue*, 486 F.3d 1149, 1153 n.8 (9th Cir. 2007) (citing 20 C.F.R. §416.966(d)(1); *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)). "In making disability determinations, the Social Security Administration relies primarily on the Dictionary of Occupational Titles for 'information about the requirements of work in the national economy.'" *Id*. 486 F.3d at 1153  (quoting SSR 00-4p at *2). The ALJ may also use testimony from a vocational expert (VE). *Id.* Evidence by a VE should generally be consistent with the DOT, and while neither the DOT nor VE testimony trumps the other when there is a conflict, it is incumbent on the ALJ to identify if a conflict exists and then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.* Because the Court finds there appears to be a conflict between the VE's testimony and the DOT, the case must be remanded to the ALJ to determine whether the VE's testimony is consistent with the definitions in the DOT and,

---

[4] "The DOT is 'the [Commissioner's] primary source of reliable job information.'...One purpose of the DOT is to classify identified job titles by their exertional and skill requirements." *Johnson v. Shalala*, 60 F.3d 1428, 1434 n.6 (9th Cir. 1995) (quoting *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990)).

if not, whether there is a reasonable explanation for any inconsistencies. *Massachi*, 486 F.3d 1152-53 (citing SSR 00–4p)). Contrary to the Commissioner's assertion that any error or conflict was harmless, the Court finds that without accurate job descriptions and characterizations, and a clear determination of how the VE arrived at her conclusions, it is not clear that the VE's testimony regarding the number of jobs available nationally and locally that Plaintiff could perform is reliable.

While the ALJ stated in his decision that the VE's "testimony is consistent with the information contained in the [DOT]," (Tr. 24), the record, including the ALJ's decision, does not reflect how the ALJ arrived at this determination. As in *Massachi*, the failure by the ALJ to inquire regarding the conflict "could have been harmless, were there no conflict, or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts ... Instead, we have an apparent conflict with no basis for the vocational expert's deviation." *Massachi*, 486 F.3d at 1154 n. 19. The administrative regulation, SSR 00–4p, states that the ALJ has "an affirmative responsibility to ask about any possible conflict between the VE ... evidence and information provided in the DOT." SSR 00–4p at *4. This requirement is consistent with the Supreme Court's observation that "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits...." *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (citation omitted). Given the record reflects an actual conflict between the DOT and the VE's testimony and given there is no explanation in the record to resolve the conflict in favor of the VE's position, this Court "cannot determine whether the ALJ properly relied on [the VE's] ... testimony." *Massachi*, 486 F.3d at 1154. As a result, this Court cannot determine whether substantial evidence supports the ALJ's finding that the Plaintiff was not disabled under the Act for the relevant time period. *Id.* (remanding for further proceedings).

IV.     **Remedy**

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593, (9th Cir.2004) (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)). Because the record presents a conflict between the DOT and the VE's testimony, and the ALJ did not comply with SSR 00–4p in addressing and resolving this conflict, the Court is unable to determine whether substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled. In the Ninth Circuit, remand for further proceedings is appropriate for such error. *Massachi*, 486 F.3d at 1154.

Accordingly, the Court will reverse the Commissioner's final decision with a remand for further proceedings consistent with this opinion.

IT IS ORDERED:

1.      Defendant's decision denying benefits is REVERSED.

2.      The case is REMANDED for further proceedings consistent with this order.

3.      The Clerk is directed to enter judgment accordingly.

Dated this 2nd day of March, 2015.


Bernardo P. Velasco
United States Magistrate Judge

- 21 -